783 P.2d 962

**DOWNTOWN NEIGHBORHOODS AS-SOCIATION, Petitioner–Appellee,**

v.

**CITY OF ALBUQUERQUE, Respondent–Appellant.**

**The Whitehouse Partnership, Intervenor–Appellant.**

No. 10341.

Court of Appeals of New Mexico.

Nov. 7, 1989.

Karl H. Sommer, Kurt H. Sommer, Sommer, Udall & Hardwick, P.A., Santa Fe, for petitioner-appellee.

James H. Foley, City Atty., Edward R. Pearson, Asst. City Atty., Albuquerque, for respondent-appellant.

Philip B. Davis, Chris Key, Albuquerque, for intervenor-appellant.

## OPINION

MINZNER, Judge.

On appellee's motion for rehearing, the prior opinion is withdrawn, and the following is substituted.

The City of Albuquerque (City) and The Whitehouse Partnership (Whitehouse) appeal from a district court decision reversing the grant of a variance by the Albuquerque City Council (City Council). Pursuant to NMSA 1978, Section 3–21–9 (Repl.1985), the Downtown Neighborhoods Association (DNA) petitioned the district court to review the City Council's decision by writ of certiorari, and the district court found the City Council's decision was not supported by substantial evidence. This appeal requires us to consider the City Council's authority under NMSA 1978, Section 3–21–8 (Repl.1985), and Albuquerque, N.M. Rev. Ordinances Section 7–14–42 C.2 (1986), to grant a variance for unnecessary hardship to the owner of an historic building. We affirm.

## FACTS AND PROCEDURAL HISTORY

In 1985, Whitehouse purchased the J.A. Garcia house, an 80–year–old, two-story home on a main arterial street near down-

town Albuquerque. Experts consider the house, which is listed on both the State Register of Cultural Properties and the National Register of Historic Places, one of the best examples of Classical Revival architecture in Albuquerque.

When Whitehouse purchased the property, the partners believed that they were entitled to use the entire first floor of the house for law offices. However, the existing zoning in fact limited incidental non-residential use to 10% of the gross floor space of the premises. After being cited by the City for non-residential use in excess of the permitted 10%, Whitehouse sought a variance from the City Zoning Hearing Examiner (Examiner).

The Examiner determined, after a hearing, that the variance should be denied because Whitehouse failed to make an adequate showing of practical difficulty and unnecessary hardship. He also found that the proposed variance was not consistent with the intent and purpose of the zoning ordinance, "in that office uses in apartment zones are intended to be incidental to the apartment use itself."

Whitehouse appealed this decision to the Environmental Planning Commission (EPC). Subsequently, the Zoning Enforcement Office issued a letter opinion that "incidental use" of a house referred to a use incidental to the urban center as a whole, rather than incidental to the use of the house itself. After a hearing, the EPC reversed the Examiner's decision and found that the parcel was exceptional and that compliance with the existing zoning would cause practical difficulty and unnecessary hardship. The EPC also found that the additional office use would not be injurious to adjacent properties, and that approval of the variance would not "set a precedent and in no way precludes the use of the existing zoning" at a later time.

Pursuant to Section 3–21–8(B), DNA appealed the EPC decision to the City Council on the grounds that no legal basis existed for granting a variance, that the variance was contrary to the intent and purpose of the plan, and that the variance would be detrimental to the neighborhood. Under the statute, the City Council is required to provide the procedure to be followed in considering appeals. *See* § 3–21–8(A). By ordinance, the City Council has provided for a preliminary review either by the full City Council or by a committee of the City Council. Albuquerque, N.M.Rev. Ordinances § 7–14–45 C. 1 (1987).

In this case, the Land Use Planning and Zoning Committee (LUPZ) of the City Council conducted a hearing, at which additional evidence was taken, and recommended that the appeal be heard by the full Council. However, after a hearing, at which more evidence was received, the City Council denied the appeal, thereby affirming the EPC decision to grant the variance. Those who voted to deny the appeal also voted to adopt the following findings: (1) the house had historical significance; (2) the historical significance of the house distinguished it from other nearby property subject to the same regulations, and thus, subjecting the house to the same regulations created unnecessary hardship; (3) the variance differed from the regulation no more than was necessary to overcome the hardship, and the requested additional incidental use was the minimum needed to create a reasonable office area; and (4) the variance would not interfere with the enjoyment of other land in the vicinity and would be consistent with the spirit of the ordinance.

On writ of certiorari to the district court, the court by stipulation reviewed a record that included all of the evidence at every level. The court found that the house was historically significant but concluded that historical significance did not make the house "exceptional" as required for a variance under Section 7–14–42 C.2.b. The court also found that the remaining findings were not supported by substantial evidence. The court concluded that granting the variance was illegal, arbitrary, and capricious.

On appeal to this court, appellants contend that there was sufficient evidence to support the City Council's findings. We first address the scope of judicial review, and then we discuss the ordinance.

SCOPE OF JUDICIAL REVIEW

■ The decision to enact an ordinance is legislative in nature, made by an elective body under its police powers for the protection of the health, safety, and welfare of the public. An aggrieved property owner may challenge the constitutionality of a zoning ordinance in court, seek to have it changed by the local legislative body, or seek a variance from the administrative body to use property in a manner prohibited by the literal requirements of the zoning ordinance. 6 R. Powell, *The Law of Real Property* ¶ 872.2 (1988). Variances are considered to be extraordinary exceptions and are granted sparingly, only under peculiar and exceptional circumstances. *Id.;* 8 E. McQuillin, *The Law of Municipal Corporations* § 25.162 (3d ed. 1983). Their purpose, in the broadest sense, is to render justice in unique and individual cases. McQuillin, *supra,* § 25.172.

■ Since a variance in effect creates a new zoning regulation for an individual parcel of land, *id.,* Section 25.160, the legislative body may delegate the authority to grant a variance only if it gives adequate guidance. *Id.,* § 25.165. The authority for an administrative officer or body to grant variances is limited by the terms of the relevant statute or ordinance. *See McClurkan v. Board of Zoning Appeals for Metro. Gov't,* 565 S.W.2d 495 (Tenn.Ct. App.1977); *Stice v. Gribben–Allen Motors, Inc.,* 216 Kan. 744, 534 P.2d 1267 (1975). In this case, the City Council is the elective body that made the initial zoning determination. It has delegated the authority to grant a variance to the EPC. The central question on appeal is whether the variance that was granted in this case was authorized. The district court decided that it was not authorized.

■ Judicial review of a zoning authority's decision is limited to questions of law. By statute, the district court must determine initially whether the decision is illegal, in whole or in part. *See* § 3–21–9(A). An appellate court conducts the same review as the district court. That determination depends upon whether the zoning authority acted fraudulently, arbitrarily, or capriciously; whether the decision is supported by substantial evidence; and whether the zoning authority acted within the scope of its authority. *Singleterry v. City of Albuquerque,* 96 N.M. 468, 632 P.2d 345 (1981); *Coe v. City of Albuquerque,* 76 N.M. 771, 418 P.2d 545 (1966); *Rowley v. Murray,* 106 N.M. 676, 748 P.2d 973 (Ct. App.1987).

■ It is clear from our statute and the cases that this court, as well as the district court, must review actions taken by a governing body such as the City Council with deference and may disturb those decisions only as provided by law. We may not disturb a decision if we are satisfied that the action was authorized and that factual issues are supported by substantial evidence.

In this case, we believe the question of whether the variance was authorized depends upon a construction of the ordinance. As we construe the ordinance, the validity of the variance depends upon factual questions that the City Council failed to resolve.

■ Where the decision depends upon factual questions that the governing body failed to resolve, the reviewing court must remand for further proceedings. *Cf. Michelson v. Michelson,* 89 N.M. 282, 551 P.2d 638 (1976) (case should be remanded when trial court's findings of fact are insufficient to permit reviewing court to decide case). Although this principle evolved in the context of appellate court review of district court decisions, we think it is applicable here by analogy. Neither we nor the district court may make the decision in the first instance. If we are to give proper deference to the City Council, in a case where it has failed to resolve ultimate facts, we will remand to permit the Council to reach a decision that can be reviewed.

THE ORDINANCE

The City Council has broad statutory authority to grant a variance. *See* § 3–21–8(C)(1). The City Council may authorize a variance "(a) which [is] not contrary to the public interest; (b) where, owing to special conditions, a literal enforcement of the zoning ordinance will result in unnecessary hardship; and (c) so that the

spirit of the zoning ordinance is observed and substantial justice done." § 3–21–8(C)(1)(a), (b), (c).

Pursuant to that authority, the City Council has adopted an ordinance which provides, in pertinent part:

a. A variance shall be approved if and only if compliance with the regular zoning provisions would cause practical difficulties and unnecessary hardship as defined in subsection b., and if the proposed development:

(1) Differs from development which would be permitted under the general development provisions no more than is necessary to overcome the practical difficulties and unnecessary hardship;

(2) Will not significantly interfere with the enjoyment of other land in the vicinity; and

(3) Is consistent with the spirit of this Ordinance, substantial justice, and the general public interest.

b. For purposes of this section, compliance with the regular zoning provisions would cause practical difficulties and unnecessary hardship if:

(1) The parcel is exceptional as compared with other land in the vicinity subject to the same regulations by reason of the physical characteristics of the land, which physical characteristics existed at the time of the adoption of the regulation or were created by natural forces or by governmental action for which no compensation was paid;

(2) The parcel is exceptional as compared with other land in the vicinity subject to the same regulations by reason of the *conditions or use* of the parcel or other land in the vicinity which condition or use existed at the time of adoption of the regulations; or

(3) The parcel is irregular, unusually narrow or shallow in shape, and the conditions existed at the time of the adoption of the regulation or was [sic] created by natural forces or governmental action for which no compensation was paid.

§ 7–14–42 C.2 (emphasis added).

■ In the construction of ordinances, like the construction of statutes, a court must ascertain and give effect to the intention of the enacting authority. *Burroughs v. Board of County Comm'rs*, 88 N.M. 303, 540 P.2d 233 (1975); *State ex rel. Battershell v. City of Albuquerque*, 108 N.M. 658, 777 P.2d 386 (Ct.App.1989). The City Council's findings suggest that those who voted to deny DNA's appeal believed that if a house has historical significance, then its owner has shown both the special conditions and the unnecessary hardship required by the statute. However, that interpretation is inconsistent with the concept of a variance and the terms of the statute.

■ The purpose of a variance is to prevent zoning regulation from operating to deprive a property owner of all beneficial use of his property. *Clerics of St. Viator, Inc. v. District of Columbia Bd. of Zoning Adjustment*, 320 A.2d 291 (D.C.App.1974). To impose restrictions that unduly interfere with that right is confiscatory, and may amount to a taking. *See id.* On the other hand, variances should be granted sparingly, only under exceptional circumstances. To do otherwise would encourage destruction of planned zoning. *See Clouser v. David*, 309 F.2d 233 (D.C.App.1962), *cert. denied*, 372 U.S. 929, 83 S.Ct. 874, 9 L.Ed.2d 733 (1963). The ultimate question to be answered is whether the applicant has shown "unnecessary hardship." In answering that question, the body considering the variance must resolve several factual questions.

The first question is whether the parcel is distinguishable from other property that is subject to the same zoning restrictions. The answer depends upon whether, as a result of the differences between this parcel and others, the zoning restrictions create particular hardship for the owner. The test is whether, because of the differences, the owner will be deprived of a reasonable return on his or her property under any use permitted by the existing zoning classification. 6 R. Powell, *supra*, at 872.2[1][b]. If this question is answered affirmatively, then the body considering the variance is entitled to conclude that there are exceptional or special circumstances justifying

consideration of a variance. If not, the applicant must seek a change in the zoning restrictions themselves. If the body considering the variance determines that the applicant has shown exceptional or special circumstances, then it still must consider whether the particular variance requested is appropriate. The answer to this question depends upon a comparison of the special circumstances shown and the public interest. The test is whether the hardship identified can be avoided consistently with the public interest. *Id.* If this question is answered affirmatively, then the zoning authority must conclude that the applicant is entitled to a variance. If not, it may deny the variance.

As we read the ordinance, it establishes the same general, two-pronged inquiry. First, the applicant must show that because of exceptional or special circumstances, compliance with the existing zoning requirements would cause practical difficulties and unnecessary hardship. Second, the applicant must show that the proposed variance: (a) differs from that permitted by the existing zoning requirements no more than is necessary to overcome the identified practical difficulties and unnecessary hardship; (b) will not significantly interfere with enjoyment of other land in the vicinity; and (c) is consistent with the spirit of the ordinance, substantial justice, and general public interest. Generally speaking, under the elements of the first criterion, the zoning authority is determining whether the applicant has shown exceptional circumstances that justify consideration of a variance. Under the second criterion, the zoning authority is determining whether the particular variance requested is appropriate.

Under the ordinance, exceptional or special circumstances are shown by establishing the facts to which any one of the three subparagraphs to Section 7–14–42 C.2.b refers. Only subparagraph (2) is applicable here.

Under that subparagraph, compliance would cause practical difficulties and unnecessary hardship if the parcel is exceptional as compared to other land in the vicinity subject to the same zoning requirements "by reason of the conditions or use of the parcel or other land in the vicinity which condition or use existed at the time of adoption of the regulations." We are not certain what the City Council intended by the phrase "conditions or use." Thus, we are not certain what kinds of special or exceptional circumstances the City Council intended Section 7–14–42 C.2.b to encompass.

■ It seems clear that designation of a house as historically significant does not in and of itself answer the ultimate question of unnecessary hardship. *See Sorg v. North Hero Zoning Bd. of Adjustment*, 135 Vt. 423, 378 A.2d 98 (1977). Our research has not disclosed any cases holding an owner's desire to preserve the historical significance of a structure was sufficient to support a variance on the ground of unnecessary hardship. *Cf. Village Bd. v. Jarrold*, 53 N.Y.2d 254, 423 N.E.2d 385, 440 N.Y.S.2d 908 (1981) (use variance not granted to preserve historic barn absent proof of unnecessary hardship).

■ "Unnecessary hardship" has been given special meaning by courts considering a zoning authority's power to grant a variance. It ordinarily refers to circumstances in which no reasonable use can otherwise be made of the land. *Stice v. Gribben–Allen Motors, Inc. See generally* Powell, *supra,* ¶ 872.2[1]; McQuillin, *supra,* § 25.160; *Kelly v. Zoning Hearing Bd.,* 87 Pa.Commn. 534, 487 A.2d 1043 (1985). The exact showing necessary to prove unnecessary hardship varies from case to case. The City Council must make the initial determination by considering all of the relevant circumstances. However, it is clear that a showing that the owner might receive a greater profit if the variance is granted is not sufficient justification in itself for a variance. *See Culinary Inst. of Am. v. Board of Zoning Appeals,* 143 Conn. 257, 121 A.2d 637 (1956); *Stice v. Gribben–Allen Motors, Inc.; McMullen v. Zoning Hearing Bd.,* 90 Pa.Commw. 119, 494 A.2d 502 (1985).

■ We recognize that Section 7–14–42 C.2.b appears to define "unnecessary hard-

ship" as any situation in which one of the conditions listed in b.1, .2, or .3 exists. That seems in fact to be the interpretation given subsection (b) by the City Council. We do not read subsection (b) in that manner, because that reading is not consistent with the City's statutory authority to grant a variance. Under Section 3–21–8(C)(1), the City cannot define "unnecessary hardship" as any situation in which one of the conditions listed in b.1, .2, or .3 exists, because such a definition equates "special conditions" with "unnecessary hardship." Under Section 3–21–8(C)(1), these terms serve different functions.

Under the statute, the City may grant a variance where, owing to special conditions, a literal enforcement of the zoning ordinance will result in "unnecessary hardship." *See* § 3–21–8(C)(1)(b). When the ordinance is read in light of the statute, it is clear that the situations listed in subsection b are the "special conditions" referred to in the statute, which must be present to support a decision to grant a variance. However, the fact that a parcel is exceptional under Section 7–14–42 C.2.b(2) is not sufficient to support a variance without a determination that enforcement of the zoning ordinance will result in unnecessary hardship.

■ In the present case, the ordinance provides that special conditions may arise either from physical characteristics unique to the land, including irregular shape, *see* § 7–14–42 C.2.b(1), (3), or from the "conditions or use of the parcel." § 7–14–42 C.2.b(2). Because the language of the ordinance encompasses conditions or use, the City Council was entitled to decide that Whitehouse need not show the physical characteristics of its parcel were unique. Nevertheless, the City Council was required to determine that the "condition" or "use" of the house makes it "exceptional" in the sense that application of the zoning restrictions affects this property more harshly than other properties under the ordinance and, thus, creates a particular hardship, depriving the owner of a reasonable return. Although the effect on this property must be exceptionally harsh in comparison to the effect on other properties, the parcel need not be the *only* property so affected. *See Rygg v. Kalispell*

*Bd. of Adjustment,* 169 Mont. 93, 544 P.2d 1228 (1976). In *Rygg,* the court recognized that the zoning agency may prefer the use of variances over rezoning to handle unique property situations in transitional neighborhoods, even though a few other properties may be similarly affected. It does not appear from the record that the City Council made this determination.

■ We conclude the City Council applied an erroneous interpretation of the ordinance in denying the appeal. The record indicates that the City Council and the EPC both misinterpreted the ordinance. Because of the misinterpretation, the zoning authority's inquiry was incomplete. Thus, the City Council failed to resolve the ultimate question of whether Whitehouse had shown unnecessary hardship.

The findings by the City Council fail to resolve the question of whether this parcel is distinguishable from other parcels subject to the same requirements, whether the differences create particular hardship for Whitehouse, and whether the requested variance is necessary to prevent undue hardship. The findings by the EPC are similar.

Under provisions of the Zoning Code dealing with the right of appeal to the City Council, the City may decline to hear an appeal further if it is satisfied that no error exists. § 7–14–45 C.1. In this case, the appeal should have been granted. On this basis, we affirm the district court's decision reversing and remanding the cause to the City Council.

CONCLUSION

We hold that the City Council erred in denying appellee's appeal. On this basis, we affirm the district court decision reversing and remanding the case to the City Council. No costs are awarded.

IT IS SO ORDERED.

BIVINS, C.J., and CHAVEZ, J., concur.