2001-NMCA-107

37 P.3d 122

Alan GOULD, Tonia Gould, Melissa Eppel, Dwight Nibbelink, Carl Friedrichs, Debra Friedrichs, Carl Gerz, Beth Gerz, Ed Knop, Sheila Knop, Bill Litzenberg, Marcie Litzenberg, Carl Livingston, Leslie Livingston, Jack Mouchette, Mary Mouchette, and Reinhard Sprenger, Petitioners–Appellants,

v.

SANTA FE COUNTY and Municipality of Santa Fe Extraterritorial Zoning Authority, The Municipality of Santa Fe, Albert Rivera, and Teresita Rivera, Respondents–Appellees.

No. 20,799.

Court of Appeals of New Mexico.

Oct. 31, 2001.

Ronald J. VanAmberg, Roth, VanAmberg, Rogers, Ortiz, Fairbanks & Yepa, LLP, Santa Fe, NM, for Appellants.

Lidia Garza Morales, Assistant City Attorney, City of Santa Fe, Santa Fe, NM, for Appellees Santa Fe County and Municipality of Santa Fe, Extraterritorial Zoning Authority and The Municipality of Santa Fe.

M.J. Keefe, Albuquerque, NM, for Appellees Albert Rivera and Teresita Rivera.

## OPINION

BUSTAMANTE, Judge.

{1} We granted Petitioners' petition for writ of certiorari seeking review of a district court order upholding the decision of the Santa Fe County Extraterritorial Zoning Authority (EZA). For the reasons discussed in this opinion, we reverse the district court's decision, as well as the decision of the EZA.

## BACKGROUND

{2} Respondents in this case are Mr. and Mrs. Rivera (Respondents), the EZA, and the City of Santa Fe. Respondents own a five-acre parcel of land in the metro-mountain area known as the Mountain Special Review District, an extraterritorial zone that requires minimum twenty-acre parcels due to concerns about the availability of water. Respondents wanted to divide their five-acre parcel into five, individual, one-acre parcels in order to give a parcel to each of their five children. Respondents applied to the Extraterritorial Zoning Commission (EZC) for a "variance request on density" and sent a letter outlining their request.

*EZC Recommendation/EZA Determination*

{3} The EZC is an advisory body to the EZA, which is a joint City and County body having jurisdiction over planning and zoning matters in the extraterritorial zone. After reviewing Respondents' application, the EZC recommended against granting the variance, and stated that "the requested variance does not constitute a minimum easing of the Ordinance requirements." In particular, the City Planner, Mr. Smith, concluded that an amendment to the ordinance would be necessary in order to grant Respondents' request because a variance is not to be used to permit densities that are prohibited by ordinance. In coming to that conclusion, Mr. Smith referred to the section in the zoning ordinance discussing variances. The County Development Review Specialist, Mr. Abeyta,

also recommended that the variance request be denied. Mr. Abeyta stated that, even if a hydrology study showed there was an abundance of water in the area, the smallest possible lot size would be 2.5 acres. The matter went before the EZC for decision in August 1998 but was twice tabled. On October 8, 1998, a hearing was held on Respondents' application.

{4} Respondents stated they had purchased the property twenty-seven years prior to the application date, and they had intended to transfer one acre of the property to each of their children. Respondents also stated that availability of a water supply was a primary land-use concern, but claimed that, since they had first drilled a well in 1973, the well had provided ample and consistent water and water pressure. Respondents stated that "it is a reliable and infinite source." Respondents did not provide any other evidence of available water sources in the area. Respondents explained they intended to retain the property within the family and would drill only one additional well and one septic tank on the property.

{5} Other witnesses spoke on behalf of Respondents, discussing their long history in the community and the high property prices in Santa Fe. The president of the neighborhood association presented a contrary view. He stated that there is no water table in the area, and the density and water problems in the area are factors that demonstrate the variance would be inappropriate. He asserted that there had been 100 to 130 septic system failures in the area in the previous ten years. Other witnesses testified they had experienced problems with water quality and quantity on their property. Numerous residents of the area wrote letters to the EZC urging it to deny the application. The letters speak of serious water shortages; difficulties with water pressure; failure of septic systems; diminished recovery time in refilling wells; percolation of sewage resulting in disposal fields up to eight feet high; concerns about water contamination and water quality; and concerns about noise and congestion resulting from concentrated living. The residents detailed the history that led to the changes in family transfer regulations designed to protect the area from overdevelopment. Following the presentation to the EZC, the variance request was approved.

{6} The matter next went to the EZA. At the hearing, Respondents explained they were life-long residents of Santa Fe who have only land to leave to their children, and their children were raised on the property, and grew up believing they were entitled to establish their own families on the land. In addition, there was testimony from other witnesses claiming it was difficult to own a home in Santa Fe; a neighbor, Mr. Salazar, had no problems with water on his divided property; the Respondents were an old Santa Fe family who had helped neighbors and the community and were "rich in their hearts"; the Respondents' request "furthers the tradition of living in Santa Fe" and furthered the preservation of the family compound concept; and denial of the request "would be an endorsement of the re-gentrification" of Santa Fe.

{7} In addition to Mr. Smith's and Mr. Abeyta's recommendations on the requested variance, others presented opposition to the Respondents' application similar to those presented to the EZC. Residents wrote a letter to the EZA detailing the problems they had experienced with respect to water in the area, the history and problems that led to the changes in family transfer requirements, and the criteria for granting variances under the ordinance. After considering the information presented by Respondents and the opponents to the variance application, the EZA commissioners discussed the possibility of set-backs to minimize impact of building on Respondents' property. Councilor Moore remarked that the EZC "continues to recommend against density variances directing the applicant to seek an amendment to the ordinance." After noting that a denial of the variance would prohibit Respondents from obtaining the value of their land, Councilor Moore moved to approve the variance. The variance was approved by a unanimous vote. Petitioners appealed that decision to the district court. The district court affirmed. Here, Petitioners appeal that affirmance.

## DISCUSSION

### A. Standard of Review

■ {8} After the briefs in this case were filed, this Court determined the scope of our review in certiorari cases. *See C.F.T. Dev., LLC v. Bd. of County Comm'rs*, 2001–NMCA–069 130 N.M. 775, 32 P.3d 784. We apply that standard to this case. Under *C.F.T. Dev., LLC*, while the district court reviews an administrative body's decision based on such standards as abuse of discretion or substantial evidence, our review is limited to the grounds listed in Rule 12–505(D)(5) NMRA 2001. Particular to this case, we review the trial court's decision under Rule 12–505(D)(5)(b), to determine whether there exists a conflict between the trial court's order and the ordinance applicable to this case.

### B. Ordinance Provisions

*Zoning Ordinance–Variance Provision*

{9} Section 3.7 of the zoning ordinance outlines the purpose of variances:

> Variances are intended to afford relief from the strict letter of the Ordinance requirements to protect against individual hardships related to unique circumstances of a particular property. Each case of a variance therefore depends on its own facts. The purpose of variances is not to effect amendments to what are perceived to be flaws in the zoning ordinance, nor to effect rezonings, nor to alleviate personal problems or inconveniences for property owners. Variances are not to be used to permit buildings, businesses, densities or intensities, or uses prohibited by ordinance nor to authorize zoning violations. Application for a rezoning or special exception or ordinance amendment may be the appropriate mechanism in these circumstances.

The ordinance allows a variance from its standards if it is "authorized by the EZA, upon recommendation of the EZC, in cases where a literal enforcement of the Ordinance provisions would result in unnecessary hardship for a particular property." The ordinance lists ten factors as criteria for review by the EZA. In order to grant a variance, the EZA must make a positive finding of fact with respect to each of the ten factors. The ten factors are:

1. That special conditions and circumstances exist which are peculiar to the land, structure or building involved and which are not applicable to other lands, structures or buildings in the same district; and

2. A literal interpretation of the provisions of the Ordinance would deprive the applicant of rights commonly enjoyed by other properties in the same district under the terms of the Ordinance; and

3. There are special conditions and circumstances which are not the result of actions by the applicant, and that the hardship is not self-imposed or self[-]created; and

4. Granting the variance requested will not confer on the applicant any special privilege that is denied by the Ordinance to owners of other lands, structures or buildings in the same district; and

5. The applicant demonstrates that the request is a minimum easing of the Ordinance requirements, making possible the reasonable use of the land, building or structure; and

6. The granting of the variance is in harmony with the general interest, the general purpose and intent of the Ordinance, and is not injurious to the neighborhood or otherwise detrimental to the public welfare; and

7. That the variance will not set a precedent which conflicts with the policies of the Extraterritorial Plan and this Ordinance; and

8. The proposed variance will not permit a use not generally or by special exception permitted in the district involved or any use expressly or by implication prohibited by the terms of this Ordinance; and

9. No nonconforming use of neighboring lands, structures or buildings in the same district and no permitted use of lands, structures or buildings in other districts has been or shall be considered grounds for the issuance of a variance; and

10. The applicant would suffer an unnecessary hardship if the variance requested were [sic] denied.

*Zoning Ordinance–Family Transfer Provision*

{10} Respondents assert that, in applying for the variance, they relied on the family transfer provision under Section 5.2C of the ordinance. The family transfer provision is included under the portion of the ordinance addressing use of the land and such considerations as density and lot size. The provision states:

> After obtaining an approved development permit, dwellings and customary accessory structures may be erected on a lot which does not meet the lot size requirement of this Ordinance if the lot has been created by *Inheritance* or *Family Transfer* provided that the restrictions and standards of this Section 5.2 C are met.

A lot is created by family transfer if it is transferred by a father or mother to their children or grandchildren. The purposes of the family transfer provision are to maintain local cultural values, to assure family transfers are not being used to circumvent zoning requirements, to set minimum environmental standards for family transfers to protect families and the community, and to permit transfers of lots that do not meet lot size requirements as a one-time gift to a child to provide a more affordable homesite for the children. Lots may be created by family transfer that do not meet the minimum twenty-acre lot size requirement. However, the ordinance specifies that no lot, "shall be smaller than one[-]half (½) of the standard minimum lot size allowed in the particular location [or] hydro-logic zone[.]"

## C. Case Law Applicable to Variances

{11} A property owner may challenge the constitutionality of a zoning ordinance in court, pursue a change in the zoning ordinance by making a request to the legislative body, or request a variance to use property in a manner that is prohibited by the zoning ordinance. *Downtown Neighborhoods Ass'n v. City of Albuquerque*, 109 N.M. 186, 189, 783 P.2d 962, 965 (Ct.App.1989).

Variances are extraordinary exceptions and are granted only under peculiar and exceptional circumstances. *Id.* "The authority for an administrative ... body to grant [a variance] is limited by the terms of the relevant ... ordinance." *Id.*

{12} Other courts have placed variances into two general categories: use variances and area variances. *State v. Outagamie County Bd. of Adjustment*, 244 Wis.2d 613, 628 N.W.2d 376, 384 (2001); *Dsuban v. Union Township Bd. of Zoning Appeals*, 140 Ohio App.3d 602, 748 N.E.2d 597, 599–600 (2000); *Ivancovich v. City of Tucson Bd. of Adjustment*, 22 Ariz.App. 530, 529 P.2d 242, 248 (1974). A use variance allows a landowner to use existing property in a manner not permitted by the zoning ordinance. *Id.* at 248. An example of a use variance is a commercial establishment, such as a garage used to repair vehicles that is located in a residential zone. *See, e.g., Craig v. City Council of Kent*, 1991 WL 147437, at 1 (No. 90–P–2247, Ohio Ct.App.1991). An area variance allows exceptions from restrictions on such matters as setback, height limitation, lot size restrictions, and density requirements. *Ivancovich*, 529 P.2d at 248.

## D. Respondent's Arguments

{13} Respondents claim their application was for an area variance and, citing to *Ivancovich*, argue that less stringent standards should apply to their application. The court in *Ivancovich* noted that less strict standards might apply to area variances but held that, even if less stringent standards were applied in that case, the applicable ordinance was more restrictive than ordinances involved in cases where area variances were granted more freely. *Id.* at 249–50. The *Ivancovich* court reversed the grant of the variance, and held that there was no showing in the record "to support the jurisdictional prerequisite for the granting of the variance," as outlined in the ordinance. *Id.* at 250.

{14} There are no New Mexico cases that categorize variances as use or area or that distinguish between the two, and we have no cases applying a rule that area variances are subject to less stringent standards

than other variances. However, we find it unnecessary to make such a distinction in this case for reasons similar to those discussed in *Ivancovich.* Even if we agreed that the variance in this case should be considered an area variance and, in general, that less stringent standards are applied to area variances, it is nevertheless necessary to examine the administrative body's authority to grant a variance and necessary to review the conditions that must be met before a variance is granted. *See id.* (demonstrating that even though court considered idea that lower standards apply to area variances, court proceeded to consider wording of the more restrictive ordinance that was applicable in that community in deciding whether the variance should have been granted). Therefore, we proceed to conduct such a review.

### E. EZA Requirements for Variances

█ {15} The authority for the EZA to grant variances is limited by the terms of the relevant ordinance. *Downtown Neighborhoods Ass'n,* 109 N.M. at 189, 783 P.2d at 965; Kenneth H. Young, *Anderson's Am. Law of Zoning* § 20.72 (4th ed.1996) (stating that power to grant variances is necessarily restricted by standards set by municipality); *see also Miller v. City of Albuquerque,* 89 N.M. 503, 506–07, 554 P.2d 665, 668–69 (1976) (holding that failure by municipal legislative body to follow regulations for accepting zone change applications imposed on others that were adopted by exercise of its legislative power was fatal to its decision on the application). The particular ordinance in this case very clearly sets out the requirements for reviewing and granting a variance application. The ordinance specifically disallows a variance to "effect rezonings, nor to alleviate personal problems or inconveniences" of property owners. *See also Anderson's Am. Law of Zoning* § 20.55 (stating that an area variance should not be affirmed if granted solely to relieve a problem personal to the applicant rather than one affecting the lot in question). In addition, the ordinance prohibits the grant of variances that permit densities prohibited by the ordinance. Both of these prohibitions were arguably violated in this case, though the density variation is dispositive. The variance granted would al-

low a marked increase in density that is specifically prohibited in the area covered by the ordinance.

### F. Ordinance Factors

*Family Transfer*

█ {16} Respondents remind us that their variance application was brought under the family transfer provision of the ordinance. As noted above, the ordinance includes a specific provision with respect to family transfers and provides for transfer of a specific lot size. In the case of a family transfer in the area covered by the ordinance, the lot size transferred can be no smaller than one-half of the minimum lot size, or ten acres. Respondents own only five acres. In other words, their lot size is already below the minimum lot size for family transfers under the ordinance. Therefore, if Respondents' application was filed under the family transfer provision, it could not have been granted under the requirements of that provision. Moreover, grant of the variance would result in a density that is specifically not permitted by the ordinance. As discussed above, the authority to grant a variance is limited by the terms of the ordinance. Since the family transfer provision of the ordinance does not allow the variance requested in this case, that cannot be the sole basis for the variance.

*EZA Authorized to Grant Variances by Statute*

{17} Apparently recognizing that the ordinance presents a severe obstacle to their position, Respondents argue that NMSA 1978, § 3–21–8 (1983), rather than the zoning ordinance, controls in this case and that it allows the EZA to grant variances based on the factors listed in that section. Essentially, therefore, Respondents contend the statute overrides the provisions of the local ordinance. Section 3–21–8(C) provides:

When an appeal alleges that there is error in any order, requirement, decision or determination by an administrative official, commission or committee in the enforcement of Sections 3–21–1 through 3–21–14 NMSA 1978 or any ordinance, reso-

lution, rule or regulation adopted pursuant to these sections, the zoning authority by a majority vote of all its members may:

(1) authorize, in appropriate cases and subject to appropriate conditions and safeguards[,] variances from the terms of the zoning ordinance or resolution:

(a) which are not contrary to the public interest;

(b) where, owing to special conditions, a literal enforcement of the zoning ordinance will result in unnecessary hardship; and

(c) so that the spirit of the zoning ordinance is observed and substantial justice done; or

(2) in conformity with Sections 3–21–1 through 3–21–14 NMSA 1978:

(a) reverse any order, requirement, decision or determination of an administrative official, commission or committee;

(b) decide in favor of the appellant; or

(c) make any change in any order, requirement, decision or determination of an administrative official, commission or committee.

Respondents argue that, under the statute, the EZA was authorized to grant a variance from the zoning ordinance if: the variance was not contrary to the public interest, enforcement of the ordinance would result in unnecessary hardship, the spirit of the ordinance is observed, and substantial justice is done.

■■■■■ {18} If we accept Respondents' interpretation of the statute as listing requirements for the EZA to authorize variances, it is clear the requirements are less detailed and less restrictive than those under the ordinance. The general rule in such situations is that if an ordinance is more restrictive, it is effective, unless it conflicts with the statute. *Nat'l Adver. Co. v. Missouri State Highway & Transp. Comm'n*, 862 S.W.2d 953, 955 (Mo.Ct.App.1993) (holding ordinance may supplement a statute by requiring more; no preemption exists unless there is a conflict); *Von Lubken v. Hood River County*, 104 Or.App. 683, 803 P.2d 750, 752 (1990) (holding "counties may enact more restrictive standards for permitting uses … than the statute requires"); *Cherokee Water & Sanitation Dist. v. El Paso County*, 770 P.2d 1339, 1341 (Colo.Ct.App.1988) (holding where neither purpose or effect of statute and regulation are inconsistent, regulation is not preempted by statute). In New Mexico, it is clear "[a]n ordinance may duplicate or complement statutory regulations." *City of Hobbs v. Biswell*, 81 N.M. 778, 781, 473 P.2d 917, 920 (Ct.App.1970). The zoning ordinance in this case is not necessarily invalid because it provides for greater restrictions than the statute. *Inc. County of Los Alamos v. Montoya*, 108 N.M. 361, 365, 772 P.2d 891, 895 (Ct.App.1989) (citing *Biswell*). The analysis to apply is "whether the stricter requirements of the ordinance conflict with state law, and whether the ordinance permits an act the general law prohibits, or prohibits an act the general law permits." *Id.*

■■■■ {19} We find no conflict between the statute governing appeals of decisions enforcing ordinances and the ordinance in this case. The requirements in the ordinance do not permit an act the statute prohibits and do not prohibit an act the statute allows. *Id.* Section 3–21–8 takes into consideration unnecessary hardship to the applicant, public interest, substantial justice, and the spirit of the ordinance. The factors in the ordinance specifically address unnecessary hardship to the applicant, as well as the policies, purpose, and intent of the ordinance. In addition, the ordinance addresses the general welfare of the landowners and of the property. The statute sets out general goals to be achieved in granting variances, and the ordinance sets out more specific requirements for meeting those goals. We conclude that the ordinance and the statute do not conflict.

## CONCLUSION

{20} We recognize the ordinance places some emphasis on values, such as culture and family continuity, discussed by Respondents

in their briefs. However, the EZA decision did not comply with the requirements of the ordinance. We reverse the decision to grant the variance. We reverse the EZA's decision to grant the variance and the district court's order affirming that decision.

{21} **IT IS SO ORDERED.**

WE CONCUR: M. CHRISTINA ARMIJO, Judge, JONATHAN B. SUTIN, Judge.