2006-NMCA-078

137 P.3d 1215

**AMERICAN CIVIL LIBERTIES UNION OF NEW MEXICO, and John Does 1–6, Plaintiffs–Appellees,**

v.

**CITY OF ALBUQUERQUE, Defendant–Appellant.**

**American Civil Liberties Union of New Mexico, and John Does 1–5, Plaintiffs–Appellants,**

v.

**City of Albuquerque, Defendant–Appellee.**

**Nos. 24,320, 24,805.**

Court of Appeals of New Mexico.

May 18, 2006.

George Bach, ACLU of New Mexico, Justin Lesky, Law Office of Justin Lesky, Reber Boult, Co–Legal Director, ACLU of New Mexico, Kari Morrissey, D. Eric Hannum,

Cooperating Attorneys for New Mexico Civil Liberties Foundation, Albuquerque, NM, Melissa Hill, Corrales, NM, for American Civil Liberties Union of New Mexico.

Robert M. White, City Attorney, Gregory S. Wheeler, Michael I. Garcia, Assistant City Attorneys, Albuquerque, NM for City of Albuquerque.

## OPINION

BUSTAMANTE, Chief Judge.

{1} We consolidate the appeals of two cases brought by the American Civil Liberties Union (ACLU) and John Does, challenging the City of Albuquerque's sex offender ordinances on the grounds that the ordinances violate the New Mexico and Federal Constitutions. We decline to address the issues raised in the older of the cases involving the City's Sex Offender Alert Program (SOAP) because they are moot following the passage of a new state law. In the second case, we affirm the district court's decision finding various provisions of the Albuquerque Sex Offender Registration and Notification Act (ASORNA) unconstitutional and upholding the remainder of the ordinance. We hold additional registration provisions not specifically addressed by the district court to be unconstitutional.

## BACKGROUND

{2} The City of Albuquerque drafted SOAP in response to a directive by the Mayor to draft an ordinance designed to close asserted loopholes in the statewide Sex Offender Registration and Notification Act, NMSA 1978, §§ 29–11A–1 to –8 (2000) (amended 2005) (SORNA). The City Council responded with the adoption of SOAP, Council Bill No. O–03–92. SOAP contained both registration and notification provisions that were broader in scope than the provisions of SORNA. SOAP also contained additional provisions that prohibited offenders from residing within a certain distance of a school, or being alone with children other than their own. The ACLU challenged SOAP, alleging violations of the New Mexico Constitution and seeking a permanent injunction. The district court found that SOAP's notification provisions, and its limitations on where an offender may live, violated procedural due process. The district court further held that the invalid provisions could not be severed without rendering SOAP incapable of accomplishing its legislative purpose, and therefore enjoined SOAP in its entirety. The City appealed.

{3} The City subsequently repealed SOAP and enacted a revised sex offender registration and notification ordinance, ASORNA, while the SOAP appeal was pending before this Court. ASORNA attempted to remedy the problems that rendered SOAP unconstitutional. Following the adoption of ASORNA, the ACLU challenged the new ordinance, on grounds similar to its prior challenge, and further argued that state law preempts ASORNA. The district court held that ASORNA is not preempted by state law. In addressing the ACLU's constitutional challenges to ASORNA, the district court held that the registration requirements for non-New Mexico residents, and the "Alone With a Child" provision, violate equal protection, and the "sex offender location" limitations violate due process. The district court severed these provisions from ASORNA, denied the ACLU's request for a stay while this appeal was pending, and allowed the ordinance to go into effect. The ACLU appealed.

{4} While this second appeal was pending before this Court, the State Legislature adopted House Bill 165,[1] which contained amendments to SORNA. HB 165 provided that the revisions to SORNA were prospectively applicable as of the effective date of the statute, July 1, 2005. HB 165 contains a State Preemption and Savings Clause, Section 29–11A–9, which preempts the field of sex offender registration and notification, but allows existing ordinances that do not conflict with SORNA to remain in effect until they are repealed. This Court permitted supplemental briefing by the parties to address the

---

1. We note that HB 165 has now been codified into law, NMSA 1978, §§ 29–11A–1 to 10 (1995, as amended through 2005).

effects of HB 165 on the pending ASORNA litigation.

{5} After a review of the records in both the SOAP and ASORNA litigation, we consolidated the appeals and hold as follows. We decline to address the issues raised in the SOAP litigation because the Preemption and Savings Clause of HB 165 prohibits the re-enactment of SOAP, and therefore the issues became moot when SOAP was repealed by the City Council. With respect to ASORNA, we hold that state law does not preempt ASORNA. In regards to the constitutional challenges to ASORNA, we affirm the district court's ruling that (1) the registration provisions for non-residents violate equal protection; (2) the "sex offender location" limitations as modified by the district court, also challenged on due process grounds, are constitutional; (3) the Alone With a Child provision violates equal protection. We also hold that the notification provisions, challenged on due process grounds, are constitutional; ASORNA is not punitive, and therefore does not violate ex post facto, double jeopardy, or cruel and unusual punishment protections. The registration requirements for the offenses of kidnaping and false imprisonment, without any indication of sexual motive, violate substantive due process. Furthermore, we hold that the registration requirements allowing the Albuquerque Police Department (APD) to collect DNA samples and dental imprinting violate search and seizure protections. We begin with a brief discussion of our holding that the appeal in SOAP is moot. We then turn to ASORNA.

**SOAP**

■ {6} We decline to address the issues raised on appeal in regards to SOAP because HB 165 effectively prohibited the reenactment of SOAP once it was repealed. HB 165 prohibits the enactment of sex offender ordinances not in effect on January 18, 2005. The bill provides:

A. The state preempts the field of sex offender registration and notification. Cities, counties, home rule municipalities and other political subdivisions of the state are prohibited from adopting or continuing in effect any ordinance, rule, regulation, resolution or statute on sex offender registration and notification.

B. After January 18, 2005, cities, counties, home rule municipalities and other political subdivisions of the state are prohibited from adopting or amending an ordinance, rule, regulation or resolution on sex offender registration and notification. An ordinance in effect on January 18, 2005 shall continue in force and effect until repealed; provided that the ordinance shall only continue in force and effect with regard to sex offenders who are required to register pursuant to the provisions of the ordinance, but who are not required to register pursuant to the provisions of the Sex Offender Registration and Notification Act. All other sex offenders shall register pursuant to the provisions of the Sex Offender Registration and Notification Act.

■ {7} The repeal of SOAP, followed by the enactment of HB 165 renders SOAP moot. The doctrine of mootness "is a limitation upon jurisdiction or decrees in cases where no actual controversy exists." *Mowrer v. Rusk*, 95 N.M. 48, 51, 618 P.2d 886, 889 (1980). "[A]n action will be dismissed if the issues ... become moot." *Id.* "We must review the judgment of the [d]istrict [c]ourt in light of [the] law as it now stands, not as it stood when the judgment below was entered." *Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc.*, 404 U.S. 412, 414, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972) (per curiam); *see also Kremens v. Bartley*, 431 U.S. 119, 126–27, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977) (holding that enactment of a new statute repealing provisions declared unconstitutional in the court below renders claims on appeal moot).

{8} There is no current controversy as to SOAP because it has been repealed and the City may not now revive it. To comment on SOAP would be to pass upon a law not in effect and, unless state law is changed, that cannot be reenacted. Thus, not only are we without a current controversy, it appears that there cannot be a controversy regarding SOAP in the foreseeable future. We note, however, that to the extent any provisions of SOAP are duplicated in ASORNA, those issues will be addressed in our analysis of

ASORNA. We now turn our attention to ASORNA.

## ASORNA

{9} The City enacted ASORNA in an effort to cure the constitutional infirmities in SOAP. The district court found certain provisions of ASORNA unconstitutional and severed those provisions from the ordinance, leaving the remaining ordinance intact. The ACLU appealed, arguing that ASORNA is preempted by state law; suffers from vagueness and over breadth, and violates due process and equal protection; violates offenders' rights to be free from unreasonable searches and seizures; and violates state and federal protections against double jeopardy, ex post facto laws, and cruel and unusual punishment. Addressing the ACLU's challenges to ASORNA, we provide more detail on the specific provisions of ASORNA in the discussion below.

## STANDARD OF REVIEW

{10} We review constitutional challenges de novo. *State v. Druktenis*, 2004–NMCA–032, ¶ 14, 135 N.M. 223, 86 P.3d 1050. In reviewing constitutional attacks, "there exists a presumption of constitutionality, and the party attacking the constitutionality of the statute has the burden of proving the statute is unconstitutional beyond all reasonable doubt." *Id.* ¶ 15. *See also City of Albuquerque v. One (1) 1984 White Chevy*, 2002–NMSC–014, ¶ 5, 132 N.M. 187, 46 P.3d 94 ("A strong presumption of constitutionality surrounds a statute.") (internal quotation marks and citation omitted). We also review issues of statutory construction de novo. *Brenneman v. Bd. of Regents of the Univ. of N.M.*, 2004–NMCA–003, ¶ 4, 135 N.M. 68, 84 P.3d 685.

## PREEMPTION OF ASORNA

{11} Prior to the adoption of HB 165, the district court held that SORNA did not preempt ASORNA. We agree, and further hold that ASORNA was not preempted by the adoption of HB 165. HB 165 preempts the field of sex offender registration and notification into the future, but allows local sex offender ordinances in effect on January 18, 2005, to continue in effect. ASORNA became effective November 5, 2003, and therefore is not preempted based on the plain language of HB 165. However, our analysis does not end there. The ACLU argues that ASORNA is preempted because it conflicts with state law.

{12} A municipality may adopt ordinances "not inconsistent" with the laws of the state for the purpose of "providing for the safety, preserving the health, promoting the prosperity and improving the morals, order, comfort and convenience of the municipality and its inhabitants." NMSA 1978, § 3–17–1(B) (1993). An ordinance can be more restrictive than a state law, as long as it supplements, complements, or duplicates the state statute but does not conflict with it. *Gould v. Santa Fe County*, 2001–NMCA–107, ¶ 18, 131 N.M. 405, 37 P.3d 122, *overruled on other grounds by Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003–NMSC–005, ¶ 16 & n. 10, 133 N.M. 97, 61 P.3d 806. In deciding whether ASORNA is invalid, we must determine if "the stricter requirements of the ordinance conflict with state law, and whether the ordinance permits an act the general law prohibits, or prohibits an act the general law permits." *Id.* (internal quotation marks and citation omitted). The ACLU contends that ASORNA is directly inconsistent with SORNA, §§ 29–11A–1 to –10; the DNA Identification Act, NMSA 1978, §§ 29–16–1 to –13 (1997, as amended through 2005); and the Omnibus Bill, now codified in various sections, including NMSA 1978, § 9–3–13 (2005), and is therefore preempted. We are not persuaded.

{13} The compilation of state laws cited by the ACLU, taken together, provide a statewide scheme for sex offender registration, notification, DNA testing, and oversight. However, they do not conflict with ASORNA, and as already noted, HB 165 expressly allows ASORNA to remain in effect. We presume the Legislature was aware of the existence of ASORNA when it enacted HB 165. *Cf. In re Kira M.*, 118 N.M. 563, 569, 883 P.2d 149, 155 (1994). Furthermore, we also presume that when enacting a statute, the Legislature "did not intend to enact a law inconsistent with existing law[s]." *Pub. Serv. Co. of N.M. v. N.M.*

*Pub. Util. Comm'n,* 1999–NMSC–040, ¶ 25, 128 N.M. 309, 992 P.2d 860 (internal quotation marks and citation omitted). The Legislature, being aware of the existence of ASORNA, was free to preempt the ordinance, and chose not to, despite the stricter requirements under ASORNA.

{14} Nor does ASORNA otherwise conflict with state law. Some requirements of ASORNA are undisputably stricter than the equivalent provisions of SORNA. For example, ASORNA's requirement for registration, reaching back to convictions in 1970, captures a broader class of offenders, but does not conflict with SORNA. Offenders required to register under the state law are not required to register under ASORNA. As a result, there will never be a direct conflict in the provisions. There is no conflict in the City requiring offenders to provide more detailed information upon registration, or broader notification provisions. Cities are free to adopt ordinances that are more restrictive than state law, which is exactly what ASORNA does. *See Gould,* 2001–NMCA–107, ¶ 18, 131 N.M. 405, 37 P.3d 122.

{15} In sum, we are not persuaded by the ACLU's arguments that through the enactment of a state sex offender law, and other related laws, the Legislature expressed a clear intent to occupy the entire field of sex offender registration and notification, thereby preempting ASORNA. On the contrary, the Legislature declared an express intent to *not* preempt the City ordinance. The language of the preemption and savings clause provides that "[a]n ordinance in effect on January 18, 2005 shall continue in force and effect until repealed." ASORNA is such an ordinance. We perceive no legislative intent implicit in SORNA, the DNA Identification Act, the Omnibus Bill, or other related laws sufficient to override this explicit language. We now turn to the ACLU's constitutional claims.

## DUE PROCESS AND EQUAL PROTECTION (VAGUENESS AND OVER BREADTH)

■■■ {16} The ACLU argues that "ASORNA suffers from a multiplicity of constitutional infirmities that violate state and federal due process and equal protection guarantees." The due process clause of article II, section 18 of the New Mexico Constitution guarantees that "[n]o person shall be deprived of life, liberty or property without due process of law; nor shall any person be denied equal protection of the laws." N.M. Const. art. II, § 18. The Fourteenth Amendment contains an analogous provision. Due process is implicated "when state conduct alters a right or status previously recognized by state law." *Doe v. Sturdivant,* No. 05–70869, 2005 WL 2769000 at *5 (E.D.Mich. Oct.25, 2005) (internal quotation marks and citation omitted). Substantive due process protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg,* 521 U.S. 702, 721, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (internal quotation marks and citation omitted); *Doe v. Moore,* 410 F.3d 1337, 1342 (11th Cir.2005) (internal quotation marks and citation omitted), *cert. denied,* 126 S.Ct. 624 (2005). Substantive due process "focuses on the validity of legislation as it equally burdens all persons in the exercise of a specific right," while equal protection "focuses on the validity of legislation that permits some individuals to exercise a specific right while denying it to others." *Marrujo v. N.M. State Highway Transp. Dep't,* 118 N.M. 753, 757, 887 P.2d 747, 751 (1994).

■■■ {17} We address only the substantive due process and equal protection arguments raised by the ACLU because its procedural due process arguments have been foreclosed by the holdings in *Connecticut Department of Public Safety v. Doe,* 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003), and *Druktenis,* 2004–NMCA–032, 135 N.M. 223, 86 P.3d 1050. We address the substantive due process and equal protection claims together because the "substantive due process attack implicitly and necessarily includes an equal protection attack." *Druktenis,* 2004–NMCA–032, ¶ 53, 135 N.M. 223, 86 P.3d 1050.

■■■ {18} The ACLU originally challenged ASORNA under the New Mexico Constitution, urging the district court to rely

on independent state constitutional grounds for finding ASORNA unconstitutional. The district court, however, found that the ACLU failed to make the required showing for a divergence from federal precedent, and therefore declined to decide the issues on independent state constitutional grounds. *See State v. Gomez*, 1997–NMSC–006, ¶ 19, 122 N.M. 777, 932 P.2d 1 (stating that a state court may rely on the state constitution, diverging from federal precedent, if it is shown that there is "a flawed federal analysis, structural differences between [the] state and federal government, or distinctive state characteristics"). The burden is on the party seeking relief under the state constitution to provide reasons for interpreting the state provisions differently from the federal provisions when there is no established precedent. *Druktenis*, 2004–NMCA–032, ¶ 38, 135 N.M. 223, 86 P.3d 1050. Despite the possibility of an independent state constitutional ground for finding an ordinance such as ASORNA unconstitutional, we agree with the district court that the ACLU has failed to meet the required showing. We therefore limit our due process and equal protection analysis to the federal constitution, unpersuaded that the state constitution affords any greater protections.

{19} When an ordinance is challenged on due process or equal protection grounds, one of three levels of review is applied, depending on either the rights affected by the ordinance, or the status or group of people it affects. *Breen v. Carlsbad Mun. Schs.*, 2005–NMSC–028, ¶ 8, 138 N.M. 331, 120 P.3d 413. "Strict scrutiny applies when the violated interest is a fundamental personal right or civil liberty" guaranteed by the constitution. *Marrujo*, 118 N.M. at 757, 887 P.2d at 751. Under strict scrutiny, the government bears the burden to demonstrate a compelling state interest supporting the challenged scheme, and to show that the statute accomplishes its purpose by the least restrictive means. *Id.* at 757, 887 P.2d at 751. Intermediate scrutiny applies when legislative classifications infringe on important

but not fundamental rights, or involve sensitive but not suspect classes.[2] *Trujillo v. City of Albuquerque*, 1998–NMSC–031, ¶ 15, 125 N.M. 721, 965 P.2d 305. Under intermediate scrutiny, the party supporting the statute must prove the scheme is substantially related to an important governmental interest. *Breen*, 2005–NMSC–028, ¶ 13, 138 N.M. 331, 120 P.3d 413. If the ordinance "does not affect a fundamental right or create a suspect classification, nor impinge upon an important individual interest," rational basis review applies. *Mieras v. Dyncorp*, 1996–NMCA–095, ¶ 27, 122 N.M. 401, 925 P.2d 518. Under rational basis, the challenger has the burden to demonstrate that the ordinance is not rationally related to a legitimate state interest, defined by our Courts as the absence of a "firm legal rationale or evidence in the record to support the ... classification." *Breen*, 2005–NMSC–028, ¶ 16, 138 N.M. 331, 120 P.3d 413 (internal quotation marks and citations omitted). We begin by looking at the nature of the interests at stake.

{20} This Court conducted a thorough analysis of the nature of the interests affected by SORNA in *Druktenis*, and concluded that the registration and notification scheme did not infringe on any fundamental rights and, therefore, rational basis was the appropriate review. *See* 2004–NMCA–032, ¶¶ 91–94, 100–01, 135 N.M. 223, 86 P.3d 1050 (stating that fundamental rights emanated from natural law, and "for the liberty interest to be a fundamental one, the interest must be one traditionally protected by our society, or rooted in history and tradition") (internal quotation marks and citation omitted). Other jurisdictions that have addressed the issues posed by sex offender registration and notification statutes have similarly held that no fundamental rights are implicated and applied a rational basis review. *See, e.g., Moore*, 410 F.3d at 1343 (stating that the Supreme Court recognized fundamental rights in regard to some special liberty interests, but has not created a broad category of rights where any alleged infringement on privacy and liberty will be subject to due

---

2. We clarify that intermediate scrutiny requires either an important right *or* a sensitive class, not an important right *and* a sensitive class as stated

in *Druktenis*, 2004–NMCA–032, ¶¶ 97–100, 135 N.M. 223, 86 P.3d 1050.

process protections); *Doe v. Tandeske,* 361 F.3d 594, 597 (9th Cir.2004) (holding that persons convicted of serious sex offenses had no fundamental right to be free from registration and notification provisions of the Alaska sex offender statute), *cert. denied,* 543 U.S. 817, 125 S.Ct. 56, 160 L.Ed.2d 25 (2004).

{21} We agree with the reasoning set forth in *Druktenis* and other jurisdictions, and conclude that no fundamental rights are implicated by the application of ASORNA. We therefore apply a rational basis standard of review. The burden is then on the ACLU to show that the ordinance is not rationally related to a legitimate governmental interest, or the absence of a "firm legal rationale" for the challenged provisions. *Druktenis,* 2004–NMCA–032, ¶ 111, 135 N.M. 223, 86 P.3d 1050. As we review the challenged provisions, we are mindful that liberty is a rational continuum which "includes a freedom from all substantial arbitrary impositions and purposeless restraints[;]" and that "[d]ue process has not been reduced to any formula." *Poe v. Ullman,* 367 U.S. 497, 542–43, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting). Although we separate the provisions of ASORNA for purposes of discussion, we are aware that taken as a whole, the ordinance imposes a substantial burden on individuals subject to it. We are also aware that looking at each provision in isolation tends to artificially dilute the overall impact of the ordinance. With this in mind, we now turn to the challenged provisions.

## REGISTRATION UNDER ASORNA

{22} ASORNA requires sex offenders who were convicted of "sex offenses" after January 1, 1970, to register with APD. A sex offense is defined as having "the same meaning the term has under [Section 29–11A–3(E),] except that ASORNA includes only offenses against [c]hildren and not offenses against [a]dults." The offenses subject to registration under Section 29–11A–3(E)(1)–(12) include criminal sexual penetration in the first, second, third, or fourth degree; criminal sexual contact in the fourth degree; criminal sexual contact of a minor in the second third or fourth degree; sexual exploi-

tation of children; sexual exploitation of children by prostitution; kidnaping when the victim is less than eighteen years of age and the offender is not a parent of the victim; false imprisonment when the victim is less than eighteen years of age and the offender is not a parent of the victim; solicitation to commit criminal sexual contact of a minor in the second, third or fourth degree; and attempt to commit any of these sex offenses. Upon registration, a sex offender must provide the APD with a variety of information, including the offender's names, aliases, date of birth, social security number, current address, the address of any residences or real property owned by the offender, place of employment including the name and telephone number of a contact person who knows the offender's location at any and all times during employment hours, drivers license number, and a list of all sex offense violations. Furthermore, when a sex offender registers under ASORNA, APD takes and retains their photographs and sets of fingerprints, and may record and retain an offender's shoe size, a DNA sample, dental imprints, and a description of tattoos, scars, and other identifying features.

{23} The district court held that the registration requirements for residents of the City contained in Section 4 of ASORNA were constitutional. The district court, relying on *Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), and *Connecticut Department of Public Safety,* 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98, noted that the United States Supreme Court has examined and approved sex offender registration schemes, including those that apply to people convicted before the enactment of the registration requirement, those allowing for widespread dissemination of sex offender information, and those that apply to a broader category of offenders than ASORNA. On the basis of *Smith* and *Connecticut Department of Public Safety,* we agree with the district court ruling that the registration requirements for New Mexico residents are constitutional with two exceptions. The registration requirements for convictions of kidnaping and false imprisonment are not rationally related to the City's interest in protecting citizens from sex offenders.

Furthermore, the registration provisions allowing for DNA sampling and dental imprints violate search and seizure protections. We discuss the kidnaping and false imprisonment requirements next, and address the DNA sampling under the search and seizure analysis below.

## REGISTRATION REQUIREMENTS FOR KIDNAPING AND FALSE IMPRISONMENT

{24} The ACLU argues that ASORNA is both vague and over broad in its registration requirements. The ACLU contends that ASORNA requires registration of an overly broad class of individuals, for example, those who have never committed crimes with a sexual motivation. Other jurisdictions faced with similar constitutional challenges have found it significant that the statute at issue applies only to crimes with a sexual motive, and have held unconstitutional statutes that are over-inclusive in their registration requirements. *See, e.g., State v. Small,* 162 Ohio App.3d 375, 833 N.E.2d 774, 782–83 (2005) (holding that "absent evidence that defendant committed the kidnaping of the minor victim with sexual motivation," denominating defendant a "sexually oriented offender lacked a rational basis under substantive due process" (internal quotation marks omitted)); *Moore,* 410 F.3d at 1340 n. 1 ("When a person is convicted of kidnaping, false imprisonment, or luring or enticing a child into a dwelling or conveyance, there must be a sexual component shown in addition to the predicate offense before designating that person as a sex offender."); *Raines v. State,* 805 So.2d 999, 1003 (Fla.Dist.Ct. App.2001) (holding that inclusion of a person convicted of false imprisonment, with no concomitant sexual component, in the definition of a sex offender violated equal protection because it was over-inclusive), *review dismissed,* 888 So.2d 623 (Fla.2004). We agree with the reasoning of this line of cases.

{25} The inclusion of kidnaping and false imprisonment as convictions requiring registration as a sex offender is not rationally related to the legitimate interest of the City in protecting victims or potential victims of sex offenders. There is no "firm legal rationale" for including offenses with no sex-

ual motivation as "sex offenses." In *Druktenis,* this Court found it significant that the criminal statutes triggering notification under SORNA all proscribed sexual conduct involving children. 2004–NMCA–032, ¶ 62, 135 N.M. 223, 86 P.3d 1050. The same is not true of ASORNA. Furthermore, we note that the hardship imposed on an offender convicted of kidnaping or false imprisonment to be labeled a sex offender, absent any evidence of a sexual motivation for the crime, is great. The City's stated purpose of ASORNA, which is the "protection of the victims and potential victims of *sex offenders*" is not furthered by the inclusion of crimes that are not sexually motivated. (Emphasis added.) We hold that the registration provision of ASORNA that requires registration for offenders with convictions of kidnaping, NMSA 1978, § 30–4–1 (2003), or false imprisonment, NMSA 1978, § 30–4–3 (1963), without any sexual component, violates due process and is therefore unconstitutional.

## REGISTRATION REQUIREMENTS FOR NON–RESIDENTS

{26} The district court held that the registration requirements for out-of-state offenders, Section 5 of ASORNA, contained a loophole rendering those provisions unconstitutional as a violation of equal protection guarantees. We provide a brief overview of the resident registration requirements and the non-resident registration requirements to clarify our discussion. ASORNA requires sex offenders to register with APD. A sex offender is defined as an adult who:

(1) is a resident of the City who is convicted of a Sex Offense against a Child in New Mexico or, (2) changes his residence to the City after that person has been convicted of a Sex Offense against a Child ... Outside New Mexico, (3) is a resident of the City who is convicted of a Sex Offense against a Child ... Outside New Mexico or (4) is a Sex Offender who is convicted of a Sex Offense against a Child ... Outside New Mexico and is temporarily in the City for more than three consecutive days at any time or an aggregate of ten or more days in a registration year.

{27} Under Section 5, registration for non-resident sex offenders temporarily in the City is required for

non–New Mexico resident[s] who ha[ve] been convicted of a Sex Offense against a Child . . . Outside New Mexico and [are]: (a) employed full-time or part-time or performing duties under a contract in New Mexico for a period of time exceeding three days or for an aggregate period of time exceeding twenty days during any calendar year or (b) attend[ing] or . . . enrolled on a full-time or part-time basis in a private or public school in New Mexico including but not limited to secondary schools, trade schools, professional institutions or institutions of higher education.

■■■ {28} These provisions result in differing treatment for resident and non-resident sex offenders that is not rationally related to the City's interest in protecting citizens from sex offenders. The district court illustrated the problem as follows:

(1) A person with a 1993 Maine conviction, who resides in Maine, and is in Albuquerque for three consecutive days in one year, is required to register under Section 4 [ (which regulates residents)], but not Section 5 (which regulates non-residents);

(2) A person with a 1993 New Mexico conviction who lives one block outside the Albuquerque city limits and works in Albuquerque every day is **not** required to register under Section 4 or Section 5;

(3) A person with a 1993 New Mexico conviction, who resides in Maine, and is in Albuquerque 300 days in one year, is **not** required to register under Section 4 or Section 5.

{29} In other words, the language in Section 5 does not require registration of those convicted sex offenders who are most likely to have the means and opportunity to reoffend in the City. Yet those offenders who were convicted of sex offenses outside of New Mexico, who reside outside the state, and are in the City only a limited number of days, must register. We agree with the district court that this violates equal protection guarantees. *See Breen*, 2005–NMSC–028, ¶ 10, 138 N.M. 331, 120 P.3d 413 (stating that the threshold question in equal protection

challenges is "whether the legislation creates a class of similarly situated individuals who are treated dissimilarly"). We affirm the holding of the district court regarding the registration requirements for out-of-state offenders.

{30} To summarize our holdings regarding the registration provisions of ASORNA, we hold that the inclusion of kidnaping and false imprisonment, without a sexual motivation, in offenses requiring registration, is not rationally related to a legitimate state interest, is over-inclusive, and therefore violates due process. We affirm the district court's holding that the registration requirements for out-of-state offenders violates equal protection guarantees and is unconstitutional. We now turn to the notification provisions of ASORNA, and determine whether they violate due process or equal protection guarantees.

**NOTIFICATION PROVISIONS**

{31} We start with an overview of the notification provisions. The notification provisions require the City to make available and disseminate sex offender registration on the City of Albuquerque's website. The ordinance provides that inclusion of a sex offender in the City's database and on the website is based solely on the fact of a prior conviction and is not based on any assessment of current dangerousness. Like the statute at issue in *Connecticut Department of Public Safety*, the ordinance in this case requires a disclaimer on the website stating that the decision to post offender information on the website is based on conviction, and the City has not assessed the specific risk posed by any particular offender or the degree of dangerousness of any offender. 538 U.S. at 5, 123 S.Ct. 1160. Furthermore, the disclaimer notes that the purpose of providing the data on the internet "is to make the information more easily available and accessible, not to warn about any specific individual."

■■■ {32} The district court did not find any constitutional violations in the notification provisions. We agree. In large part, ASORNA simply makes available, the City's website, information that is already publicly available. *See Smith*, 538 U.S. at 98, 123

S.Ct. 1140 (noting that Alaska's Megan's Law provides for "dissemination of accurate information about a criminal record, most of which is already public"). As the Court reasoned in *Smith*, "[a]lthough the public availability of the information may have a lasting and painful impact on the convicted sex offender, these consequences flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record." *Id.* at 101, 123 S.Ct. 1140. SORNA already provides for public dissemination of sex offender information on the State website, and ASORNA simply provides information on a broader class of offenders. The City contends that providing sex offender information on the City's website is rationally related to the City's interest in allowing the public and authorities to identify sex offenders accurately and "to know their whereabouts even if they decide to move and reestablish residences." We agree, and hold that the notification provisions are constitutional, as they are rationally related to the City's interest in allowing the public and authorities to identify sex offenders accurately, and to know their whereabouts.

**SEX OFFENDER LOCATION**

 {33} The "sex offender location" provision states that sex offenders "shall not acquire, mortgage or newly occupy any real property, occupy or acquire any real property by lease or otherwise or establish a place of lodging within 1000 feet of a[s]chool." The district court held that language in this provision, which may be read to require offenders currently owning property within 1000 feet of a school to have to relocate, was constitutionally infirm. The intent of the provision was to prohibit sex offenders from newly acquiring property within 1000 feet of a school, but the language did more than that. The district court found that the language could prohibit a second mortgage on an existing home, and failed to provide an exclusion of existing owners.

{34} The district court severed the constitutionally defective language from the "sex offender location" provision, and left the remaining portions intact. Following the dis-

trict court's ruling, the provision now reads, "Sex Offenders shall not acquire, or newly occupy any real property, acquire any real property by lease or otherwise or establish a place of lodging within 1000 feet of a School." As modified, the provision serves its intended purpose, to prevent sex offenders from *newly* occupying a residence within 1000 feet of a school, and is constitutional. The provision is rationally related to the City's interest in protecting children from sex offenders by preventing them from living within 1000 feet of places where children congregate.

{35} We note that other jurisdictions that have considered similar provisions have upheld "sex offender location" provisions as constitutional. *See Doe v. Miller*, 405 F.3d 700, 705, 710–16 (8th Cir.2005) (holding that Iowa statute prohibiting sex offenders from residing within 2000 feet of a school or daycare does not infringe on liberty interests sufficiently to require heightened scrutiny and was rationally related to a legitimate state interest); *People v. Leroy*, 357 Ill. App.3d 530, 293 Ill.Dec. 459, 828 N.E.2d 769, 775 (2005) (concluding that prohibiting sex offenders from living within 500 feet of a playground or a facility providing programs or services for children bears a reasonable relationship to the goal of protecting children from known sex offenders); *Lee v. State*, 895 So.2d 1038, 1041–44 (Ala.Crim.App.2004) (in an ex post facto challenge, noting that there is nothing indicating that the regulatory scheme prohibiting sex offenders from living within 2000 feet of a school "is anything other than reasonable in light of the nonpunitive objective of keeping children safe from convicted sex offenders.") We find the reasoning in these cases persuasive. Prohibiting sex offenders from newly residing within 1000 feet of a school is rationally related to the City's objective to protect children from sex offenders. We affirm the district court's holding in regards to the "sex offender location" provision, and hold that as modified by the district court, the provision is constitutional. We now turn to the alone with a child provision.

**ALONE WITH A CHILD**

 {36} ASORNA prohibits sex offenders from being alone with a child unless a

responsible adult is present. "Alone with a child" is defined as being "present in the same room or in a vehicle with a Child other than [the offender's w]ard, their own biological or legally adopted Child or their own biological grandchild[, or,] if [they are] outdoors, within a 30 yard radius of [such] a Child." A "responsible adult" is "an adult who is not a sex offender."

{37} The district court found the "alone with a child" provision to be constitutionally infirm because it violates equal protection guarantees. The district court illustrated the problem with the following example: "While a grandfather who sexually abused his granddaughter is permitted to be alone with that child, a twenty year old sister of a child convicted of touching the genital area of a fully clothed sixteen year old boy, could not be alone with her sister." The district court reasoned that excluding stepparents, siblings, or other persons similarly situated to grandparents equates to treating similarly situated people dissimilarly, thus violating equal protection. *See Breen*, 2005–NMSC–028, ¶ 10, 138 N.M. 331, 120 P.3d 413 (stating that the threshold inquiry of an equal protection analysis is whether similarly situated persons are treated dissimilarly). The City conceded that there was no rational basis for the distinction. In fact, the district court pointedly asked the City at trial if there was a rational basis for the categorization allowing a grandparent sex offender to be alone with a grandchild, while prohibiting a stepfather, brother, or sister. The City answered "no," there was not a rational basis for the dissimilar treatment. Absent any reason to support the dissimilar treatment that results from the alone with a child provision, we agree with the district court. We therefore affirm the district court's ruling that the alone with a child provision is not rationally related to a legitimate governmental interest, violates equal protection guarantees, and therefore is unconstitutional.

## SEARCH AND SEIZURE

{38} The ACLU next argues that ASORNA violates both the Fourth Amendment and article II, section 10 of the New Mexico Constitution, which protect against unreasonable searches and seizures. The ACLU contends that the violation stems from forcing sex offenders to submit to compulsory DNA testing and dental imprinting after they have served their entire sentence. According to the ACLU, this amounts to a search and seizure of evidence without requiring any showing that registrants have committed, or are likely to commit, a new crime. The challenged provision states:

When a Sex Offender registers under ASORNA, APD shall take and retain their photograph and a set of fingerprints. Additionally, APD may record and retain the person's shoe size, *a DNA sample, dental imprints* and a description of tattoos, scars and other identifying features that would assist in identifying the Sex Offender.

(Emphasis added.)

The ACLU argues that while compulsory DNA testing or blood sampling from offenders who are currently incarcerated, or on probation or parole, has been upheld as constitutional, requiring submission of DNA sampling or dental imprinting by persons convicted of offenses who are no longer in custody or subject to some type of supervisory release is a violation of the Fourth Amendment. We agree.

{39} The Fourth Amendment and article II, section 10 of the New Mexico Constitution both protect citizens against unreasonable searches and seizures. Reasonableness is the touchstone of our Fourth Amendment analysis in all circumstances of a governmental invasion of a citizen's personal security. *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Attaway*, 117 N.M. 141, 149, 870 P.2d 103, 111 (1994). The ACLU expressly argues that the New Mexico Constitution affords greater protections than the Fourth Amendment, citing *State v. Cardenas–Alvarez*, 2001–NMSC–017, ¶ 12, 130 N.M. 386, 25 P.3d 225 (stating that article II, section 10 of the New Mexico Constitution has been interpreted more broadly than its federal counterpart), and *Gomez*, 1997–NMSC–006, ¶¶ 22–23, 122 N.M. 777, 932 P.2d 1 (discussing requirements for preserving state constitutional claims for appellate review). We agree that broader protections may be available under the state constitution, and that

the ACLU has preserved the issue for review. However, since we hold that the challenged provisions violate the Fourth Amendment, we need not reach the possibly broader protections afforded under the state constitution.

{40} The compulsory administration of a blood test "plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment." *Schmerber v. Cal.*, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Furthermore, "[s]uch testing procedures plainly constitute searches of 'persons,' and depend antecedently upon seizures of 'persons,' within the meaning of that Amendment." *Id.* "Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned." *Id.* at 770, 86 S.Ct. 1826.

{41} Individuals who are incarcerated, or subject to some form of conditional release, traditionally enjoy fewer privacy rights than other citizens, and therefore may be subject to compulsory DNA testing. *United States v. Kimler*, 335 F.3d 1132, 1146–47 & n. 14 (10th Cir.2003) (holding that DNA sample extraction, "while implicating the Fourth Amendment, is a reasonable search and seizure under the special needs exception to the . . . warrant requirement" as applied to conditions of a convicted felon's supervised release from incarceration); *Shaffer v. Saffle*, 148 F.3d 1180, 1181 (10th Cir. 1998) (holding that "while obtaining DNA samples implicates Fourth Amendment concerns, it is reasonable in light of an inmate's diminished privacy rights"). The same is not true for citizens who are not incarcerated, or who have completed their conditions of probation or parole.

{42} Following the enactment of HB 165, the effect of ASORNA is to require registrants who are not incarcerated, and who have completed the terms of their probation or parole prior to July 1, 1995, to submit to bodily intrusions for DNA testing or dental imprinting at the request of APD. The City offers no authority for its proposition that "[t]aking DNA is not a search and seizure," other than a reference to *Connecticut De-*

*partment of Public Safety*, 538 U.S. at 4, 123 S.Ct. 1160.

{43} However, *Connecticut Department of Public Safety* did not address the issue of retroactive DNA collection from offenders that are no longer incarcerated or under any type of supervised release. *Id.* The City argues that the registration scheme at issue in *Connecticut Department of Public Safety* contemplated DNA testing, and the Court made no determination that it was unconstitutional. This argument is not persuasive. The Supreme Court simply was not presented with a challenge to the DNA testing requirement, and therefore it was not addressed. *Id.* Furthermore, the DNA testing requirements in the *Connecticut Department of Public Safety* scheme, unlike those in ASORNA, did not apply retroactively. 538 U.S. at 4–5, 123 S.Ct. 1160.

{44} The City asserts that by raising the search and seizure issue, the ACLU is implicitly challenging the DNA Identification Act and, at the same time, arguing that the Act preempts ASORNA. The City appears to misunderstand the provisions of the DNA Identification Act. The Act only allows collection of DNA samples from covered offenders under limited circumstances, including:

(1) a covered offender convicted on or after July 1, 1997 shall provide a sample immediately upon request of the corrections department so long as the request is made before release from any correctional facility or, if the covered offender is not sentenced to incarceration, before the end of any period of probation or other supervised release;

(2) a covered offender incarcerated on or after July 1, 1997 shall provide a sample immediately upon request of the corrections department so long as the request is made before release from any correctional facility.

Section 29–16–6(A)(1)–(2). The provisions for DNA testing under the Act are not retroactive, and allow for compulsory testing only of those individuals that are currently incarcerated, on probation, or parole, or some

type of supervised release.[3] The ACLU does not challenge the constitutionality of DNA testing for those groups, and in fact acknowledges that prisoners, probationers, and parolees traditionally enjoy fewer privacy rights than other citizens.

{45} For the foregoing reasons, and because the City has offered no authority to the contrary, we hold that the provisions of ASORNA allowing APD to collect DNA samples and dental imprints from registrants, is an unreasonable governmental invasion into the individual's personal security or privacy, thus violating the Fourth Amendment.

## EX POST FACTO LAWS, DOUBLE JEOPARDY, AND CRUEL AND UNUSUAL PUNISHMENT

{46} The ACLU argues that ASORNA violates state and federal prohibitions on double jeopardy, ex post facto laws, and cruel and unusual punishment. The Ex Post Facto Clause of Article I, Section 10 of the United States Constitution and article II, section 19 of the New Mexico Constitution prohibit the application of any law passed "after the fact" and "applies only to penal statutes which disadvantage the offender affected by them." *State v. Nunez*, 2000–NMSC–013, ¶ 112, 129 N.M. 63, 2 P.3d 264 (internal quotation marks omitted). Double jeopardy protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and it protects against multiple punishments for the same offense. *Swafford v. State*, 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991). Constitutional protections against cruel and unusual punishment imply "a limitation upon the form and character of punishment that may be prescribed." *State v. Peters*, 78 N.M. 224, 227, 430 P.2d 382, 385 (1967). Central to each of these constitutional claims is the issue of punishment. If ASORNA is not punitive, none of these constitutional protections are violated.

{47} We deal with these arguments summarily because "[v]irtually all federal circuits and state jurisdictions considering this issue have rejected the argument that retroactive application of sex offender statute registration and notification requirements violates constitutional ex post facto prohibitions." *Druktenis*, 2004–NMCA–032, ¶ 36, 135 N.M. 223, 86 P.3d 1050. *See, e.g., Smith*, 538 U.S. at 105–06, 123 S.Ct. 1140 (holding that the retroactive application of Alaska's sex offender law did not violate the Ex Post Facto Clause because the statute was not so punitive either in purpose or effect as to negate the intention to deem it civil); *Cutshall v. Sundquist*, 193 F.3d 466, 476–77 (6th Cir. 1999) (holding sex offender scheme is not punitive, and therefore does not violate ex post facto prohibitions); *Druktenis*, 2004–NMCA–032, ¶ 32, 135 N.M. 223, 86 P.3d 1050 (holding that the "Legislature's intent in enacting SORNA was to enact a civil, remedial, regulatory, nonpunitive law," and the effects of the law were not punitive); and *State v. Moore*, 2004–NMCA–035, ¶ 24, 135 N.M. 210, 86 P.3d 635 (holding that although the provisions of SORNA "are immediate and automatic, they do not constitute punishment for a crime," and furthermore, that SORNA is "remedial in purpose and effect").

{48} The stated intent of ASORNA is to provide "a more comprehensive local counterpart" to SORNA, to address the unique, local concerns of Albuquerque. Although the requirements of ASORNA may have adverse consequences on offenders as do those in SORNA, they do not rise to the level of punishment. Therefore, since ASORNA is a regulatory scheme that is not punitive in intent or effect, the retroactive application of the ordinance does not violate the Ex Post Facto Clause, double jeopardy, or cruel and unusual punishment prohibitions.

{49} The ACLU raised additional equal protection concerns in their supplemental brief-in-chief, following enactment of HB 165, which we briefly address here. Subsequent to the passage of HB 165, sex offenders in Albuquerque are required to comply with one of three registration and notification schemes. The amendments in

---

3. SB 216, passed by the 2006 Legislature, provides for DNA collection of certain felony arrestees, on or after January 1, 2007. We express no opinion about the constitutionality of SB 216, and it does not enter into our analysis.

HB 165 apply only prospectively to offenses committed on or after July 1, 2005, or to those offenders still incarcerated or on probation or parole for a sex offense as of July 1, 2005. For those individuals, SORNA, plus the HB 165 amendments, apply. For offenders convicted on or after July 1, 1995, but before July 1, 2005, the provisions of SORNA prior to the enactment of HB 165 apply. For offenders who committed offenses after January 1, 1970, but before July 1, 1995, the provisions of ASORNA apply. No offender is required to register under the provisions of more than one law. The result of this classification is that offenders subject to the more stringent requirements of ASORNA are those who have not committed an offense or been on probation or parole since July 1, 1995, whereas the more recent offenders are subject to the less stringent requirements of SORNA.

{50} Although we recognize the concerns this scheme raises, we find no equal protection violation. Both the City and the State have valid interests in protecting the public from sex offenders. As we discussed in the preemption analysis, the City may enact an ordinance that is more restrictive than state law. That is what occurred with ASORNA. While we appreciate the ACLU's concerns about the different schemes and requirements that result following the enactment of HB 165, the different requirements do not create an equal protection violation.

## CONCLUSION

{51} We conclude with a brief summary of our holdings. We decline to address the issues raised in the SOAP litigation because they are moot. We affirm the district court's decision finding various provisions of ASORNA unconstitutional and severing those provisions from the ordinance. In addition, we hold that the inclusion of kidnaping and false imprisonment absent a sexual motivation for the crimes is over broad and violates due process. We also hold that the registration provision which allows APD to collect DNA samples and dental imprints is unconstitutional. We also hold that ASORNA does not violate ex post facto, double jeopardy, or cruel and unusual punishment protections.

{52} As a final note, we are well aware of the public concern over "sex offenders." However, as this Court stated in *Mieras*, 1996–NMCA–095, ¶ 53, 122 N.M. 401, 925 P.2d 518 (Hartz, J., specially concurring), "[t]o affirm [or reverse] the constitutionality of a statute is not to approve it on policy grounds. Unfortunately, or fortunately, judges are not ex officio members of the legislature. We should refrain from imposing our views of policy under the banner of constitutional principles." Thus, we may not, and do not, express any view on the wisdom of the provisions found to be constitutionally valid or infirm.

{53} **IT IS SO ORDERED.**

I CONCUR: JAMES J. WECHSLER, Judge.

IRA ROBINSON, Judge, specially concurring.

ROBINSON, Judge (specially concurring).

{54} The City of Albuquerque has chosen to exercise its right to make its sex offender registration ordinance, ASORNA, so much more stringent than that of the State of New Mexico, SORNA, and any other municipality in New Mexico. Albuquerque has a right to do so. I have no sympathy for convicted sex offenders and, as far as I am concerned, that is all well and good. But what effect will ASORNA have? It will hopefully keep sex offenders away from schools where children play. It will make the identities and whereabouts of sex offenders more widely known and discoverable to the average citizen and certainly to the average parent who, in this dangerous society, worries constantly about the safety of his or her child every time the child is out of sight.

{55} So, if the heat is on these sex offenders in Albuquerque, what will they do? They will leave Albuquerque and go to another city or town in New Mexico, which has no ordinance of its own and their life will be governed by the less restrictive and less stringent provisions of the State's sex offender registration law, SORNA. My concern is that we will drive them out of Albuquerque and into smaller cities and towns in New Mexico where the police forces and local authorities do not have the resources to han-

dle the burden of keeping track of these sex offenders and making sure that they do not violate SORNA.

{56} One way that the smaller communities could alleviate this ominous problem is to pass their own ordinances duplicating the stringent provisions of Albuquerque's sex offender law so that the sex offender would find no advantage in moving to a smaller town or city. But, alas, the State has preempted the field and after January 18, 2005, no new sex offender registration ordinance may be enacted by cities, counties, and local governments. Albuquerque's ordinance predates the cut-off, so it may remain in force. *See* Opinion at page 4, line 20.

{57} Thus, SORNA could be viewed as being in direct conflict with NMSA 1978, § 3–17–1(B) (1993), which states that communities may adopt ordinances "not inconsistent" with the laws of the state for the purpose of "providing for the safety, preserving the health, promoting the prosperity and improving the morals, order, comfort and convenience of the municipality and its inhabitants." *Id.*

{58} With these additions, I specially concur in this Opinion.