2013 OK 71

Joseph W. HENDRICKS,
Plaintiff/Appellant,

v.

Justin JONES ex rel. STATE of Oklahoma
ex rel. OKLAHOMA DEPARTMENT OF
CORRECTIONS, Defendant/Appellee.

No. 108,797.

Supreme Court of Oklahoma.

Sept. 17, 2013.

James Alexander Drummond, Jim Drummond Law Firm, PLC, Norman, Oklahoma, for Plaintiff/Appellant.

Larry Foster, II, Oklahoma Department of Corrections, Cornelius Leader and John David Hadden, Asst. Attys. Gen., Oklahoma City, Oklahoma, for Defendant/Appellee.

COMBS, J.:

¶ 1 Plaintiff, Joseph W. Hendricks (hereinafter, "Hendricks"), challenges the constitutionality of the Sex Offenders Registration Act (hereinafter, "SORA") 57 O.S., § 581 et seq., and enforcement thereof by the Defendant, Justin Jones ex rel. State of Oklahoma ex rel. Oklahoma Department of Corrections (hereinafter, "Department"). We hold applying SORA's requirements to sex offenders now residing in Oklahoma who were convicted in another jurisdiction prior to SORA's enactment but not applying the same requirements to a person convicted in Oklahoma of a similar offense prior to SORA's enactment, violates a person's equal protection guarantees.

## BACKGROUND

¶ 2 This matter was assigned to this office on February 6, 2013. In 1989, the Oklahoma Legislature enacted SORA to provide a system to register sex offenders. Title 57 O.S. Supp.1989, § 581 et seq. In 1997, section 581 was amended to add legislative findings essentially stating the purpose of SORA was to create a system of registration permitting law enforcement to identify sex offenders and alert the public of such sex offenders when necessary.[1] SORA has been amended by the Oklahoma legislature in almost every year since its creation.

---

1. Title 57 O.S. Supp.1997, § 581(B) provides as follows:

The Legislature finds that sex offenders who commit other predatory acts against children and persons who prey on others as a result of mental illness pose a high risk of re-offending after release from custody. The Legislature further finds that the privacy interest of persons adjudicated guilty of these crimes is less important than the state's interest in public safety. The Legislature additionally finds that a system of registration will permit law enforcement officials to identify and alert the public when necessary for protecting the public safety.

¶ 3 Hendricks came to Oklahoma in August 2009. At that time, subsection A of section 582 provided SORA was applicable to a person who **after** November 1, 1989, has been convicted, received a suspended sentence or any other probationary term, or is currently serving a sentence or any form of probation or parole for one of the listed Oklahoma crimes and who is residing, working or attending school in Oklahoma.[2] The language, "or is **currently** serving a sentence or any form of probation and parole," was added by 2005 Okla. Sess. Laws c. 123, § 1, eff. Nov. 1, 2005. We interpret this language to mean SORA was also intended to apply to persons convicted in Oklahoma of one of the listed crimes, regardless of when the conviction occurred, and who, on November 1, 2005, were still serving their sentence or any form of probation or parole. Subsection B of section 582 also made SORA applicable to persons who after November 1, 1989, reside, work or attend school in Oklahoma and who, **at any time,** were convicted or received a suspended sentence in any court of another state, federal court, an Indian tribal court or a military court for an applicable sex crime.[3] Section 583 of SORA also provided, as follows:

> B.    Any person who has been convicted of an offense or received a deferred judgment for an offense **in another jurisdiction,** which offense if committed or attempted in this state, would have been punishable as one or more of the offenses listed in Section 582 of this title and who enters this state on or after November 1, 1989, shall register, in person, as follows: . . . .
>
> Title 57 O.S. Supp.2008, § 583 (emphasis added).

Pursuant to such laws, persons convicted **in Oklahoma** of an applicable offense before November 1, 1989, would not have to register unless they were, as of November 1, 2005, still serving their sentence or any form of probation or parole; however, persons like Hendricks who were convicted of an equivalent offense **in another jurisdiction** before November 1, 1989, would have to register regardless if they were still serving their sentence or any form of probation or parole as of November 1, 2005.[4] Therefore, the statute treated persons differently depending upon whether their conviction, suspended sentence, deferred judgment or any probationary term was imposed in Oklahoma or in another jurisdiction.

¶ 4 Hendricks, was convicted in California in 1982 of the Oklahoma equivalent offense of lewd or indecent acts to a child.[5] The record does not reflect whether he was serving his sentence or any form of probation or parole on November 1, 2005. He moved to Oklahoma in August 2009 and was informed of his duty to register under SORA a couple of months later. Hendricks registered but denied being subject to SORA. On March 22, 2010, he filed a Petition for Injunction to prohibit the Department from continuing to force him to register as a sex offender. Both parties thereafter filed for summary judgment. Hendricks argued the retroactive application of SORA by the Department violated the ban on ex post facto laws, the Privileges and Immunities Clause of the United States Constitution, the Due Process Clauses of the United States and Oklahoma Constitutions, and denied him equal protection of the law.

¶ 5 The trial court entered an order sustaining summary judgment in favor of the Department, finding SORA and its application to the plaintiff constitutional. Hendricks appealed. The Oklahoma Court of Civil Appeals, Division IV, (hereinafter "COCA") affirmed the trial court's ruling, finding SORA applies to Hendricks but declined to address the constitutionality of SORA. COCA remanded the matter to determine what specif-

---

**2.**   2009 Okla. Sess. Laws c. 234, § 147 (emerg. May 21, 2009).

**3.**   *Id.* The "at any time" language was added to subsections B and C of § 582 by 2005 Okla. Sess. Laws c. 123, § 1 (eff. Nov. 1, 2005).

**4.**   Note: the registration portion of SORA found in § 583 does not use the same language of

"after November 1, 1989" as found in § 582. It instead it uses the language "on or after November 1, 1989."

**5.**   The current Oklahoma statute concerning lewd or indecent acts to a child is 21 O.S.2011, § 1123.

ic amendments to the original act should apply, stating that Hendricks was subject to only the SORA provisions in effect at the time he became subject to them. Hendricks appealed and we previously granted certiorari.

## STANDARD OF REVIEW

■ ¶ 6 This case presents only questions of law, not fact, and we shall review such questions *de novo*. *In re Estate of Bell–Levine*, 2012 OK 112, ¶ 5, 293 P.3d 964, 966. An appeal on summary judgment comes to this Court as a de novo review. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. On appeal, this Court assumes "plenary independent and non-deferential authority to reexamine a trial court's legal rulings." *Kluver v. Weatherford Hospital Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084.

## ANALYSIS

■ ¶ 7 Out of Hendricks' several constitutional challenges we find the equal protection argument to be dispositive. Hendricks was convicted in California in 1982 well before SORA's enactment in 1989. From a simple reading of SORA, had he been convicted in Oklahoma in 1982 he would not be required to register under SORA unless on November 1, 2005, he was still serving his sentence or any form of probation or parole. However, based on subsections B of sections 582 and 583, because he was convicted in another jurisdiction prior to the enactment of SORA, he is required to register. Hendricks asserts by limiting registration to Oklahoma offenders whose convictions occurred **after** SORA's effective date, the law implicitly ac-

knowledges those Oklahoma offenders convicted **prior** to SORA's enactment receive a benefit not available to him. However, SORA denies this protection to persons, like Hendricks, solely because their pre-SORA conviction occurred in another jurisdiction. Hendricks asserts there is no rational basis for this disparate treatment and he has been denied equal protection of the law. We agree.

■ ¶ 8 The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution mandates no state "deny to any person within its jurisdiction the equal protection of the laws."[6] The Oklahoma Constitution does not have an equivalent to the federal Equal Protection Clause; however, this Court has identified a functional equivalent in our due process section.[7] Although not an absolute guarantee of equality of operation or application of state legislation, the Equal Protection Clause's purpose is to safeguard against arbitrary discrimination.[8]

■ ¶ 9 An equal protection analysis requires strict scrutiny of a legislative classification only when such classification impermissibly interferes with the exercise of a fundamental right, such as, the right to vote, right of interstate travel, rights guaranteed by the First Amendment, or right to procreate, or operates to the peculiar disadvantage of a suspect class, such as, one based upon alienage, race, or ancestry.[9] Unless a classification warrants some form of heightened review, the Equal Protection Clause only requires the classification rationally further a legitimate state interest.[10] This lower

---

6. U.S. Const. amend. XIV, § 1. When called upon to analyze a case on equal protection grounds, a court will apply one of three standards of review; (a) rational basis, (b) heightened scrutiny, or (c) strict scrutiny. If the classification does not implicate a suspect class or abridge a fundamental right, the rational-basis test is used. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440–42, 105 S.Ct. 3249, 3254–255, 87 L.Ed.2d 313 (1985) (*noted in Gladstone v. Bartlesville Independent School District No. 30*, 2003 OK 30, ¶ 9 n. 22, 66 P.3d 442, 447 n. 22).

7. Art. 2, § 7, Okl. Const. provides:

"No person shall be deprived of life, liberty, or property, without due process of law."
See *Fair School Finance Council v. State*, 1987 OK 114, ¶ 54, 746 P.2d 1135, 1148.

8. *Ross v. Peters*, 1993 OK 8, ¶ 17, 846 P.2d 1107, 1114.

9. *Gladstone v. Bartlesville Independent School District No. 30*, 2003 OK 30, ¶ 9, 66 P.3d 442, 447.

10. *Ross* at ¶ 17.

threshold is identified as the rational-basis test.

¶ 10 Here the classification appears to be *persons residing in Oklahoma after November 1, 1989, who were convicted of a sex crime in another jurisdiction prior to SORA's enactment on November 1, 1989.* Neither the trial court nor the Oklahoma Court of Civil Appeals addressed what level of scrutiny to use in analyzing Hendricks' equal protection challenge concerning this classification. However, other jurisdictions have found classifications based upon where a person was convicted failed even the rational-basis test. We agree and find this classification fails to meet this lower threshold.

¶ 11 In *Doe v. Pennsylvania Bd. of Probation and Parole*, 513 F.3d 95 (3rd Cir.2008), a Pennsylvania resident was convicted in New Jersey of a sex offense but was allowed to serve out his probation in Pennsylvania. He challenged the notification provisions of Pennsylvania's "Megan's Law"[11] as applied to him because the provisions unfairly treated out-of-state offenders differently. Specifically, before notification was required of an in-state offender, the law required a comprehensive assessment procedure to determine whether the offender was a sexually violent predator. *Doe*, 513 F.3d at 101. In contrast, all out-of-state offenders who transferred parole to Pennsylvania[12] were subject to the community notification provisions, regardless of their offense of conviction or their potential danger to the community. *Doe*, 513 F.3d at 101. Doe asserted such application violated his constitutional right to equal protection. *Doe*, 513 F.3d at 100.

¶ 12 The court found the rational basis test had **not** been satisfied, holding:

> [h]ere, the Commonwealth argues that its interest in public safety is a legitimate concern, and that its practice of treating in-state and out-of-state offenders differently is rationally related to its efforts at alleviating this concern. We readily agree that protecting its citizens from sex offenses committed by repeat offenders is a legitimate state interest. The question, however, is whether the Commonwealth's denial of equivalent process to both in-state and out-of state parolees is rationally related to its security concerns. We conclude it is not.

*Doe*, 513 F.3d at 101.

The court rejected the state's various arguments for treating out-of-state offenders differently from in-state offenders as having no rational relation to the goal of protecting the state's population from sex offenders.[13] It held:

> In summary, we note that Pennsylvania's interest in protecting its citizens from sexually violent predators is certainly compelling. However, subjecting out-of state sex offenders to community notification without providing equivalent procedural safe-

---

**11.** A term used for the various laws requiring mandatory registration of sex offenders. It is named after Megan Kanka, a 7–year–old New Jersey girl, who was sexually assaulted and murdered in 1994 by a neighbor who, unknown to the victim's family, was a prior convicted sex offender. *See Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 1145, 155 L.Ed.2d 164 (2003). In *Smith* the United States Supreme Court stated: The crime gave impetus to laws for mandatory registration of sex offenders and corresponding community notification. In 1994, Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, title 17, 108 Stat. 2038, as amended, 42 U.S.C. § 14071, which conditions certain federal law enforcement funding on the States' adoption of sex offender registration laws and sets minimum standards for state programs. By 1996, every State, the District of Columbia, and the Federal Government had enacted some variation of Megan's Law.

*Smith v. Doe*, 538 U.S. at 89–90, 123 S.Ct. 1140.

**12.** The parole transfer mechanism by which the offender moved to Pennsylvania was the result of a Parole Compact between Pennsylvania and New Jersey, the terms of which are described at *Doe v. Pennsylvania Bd. of Probation and Parole*, 513 F.3d at 102–103.

**13.** Pennsylvania made 4 basic arguments: 1) it would be impossible to replicate the legal proceedings it provides in-state offenders for out-of-state offenders; 2) providing such procedures would increase time and expense; 3) the "harshness" of community notification differs for in-state vs. out-of-state offenders; and 4) the publicity given to a sex offender's trial in Pennsylvania makes notification less necessary for those offenders. *Doe*, 513 F.3d at 108.

guards as given to in-state sex offenders is not rationally related to that goal. *Doe,* 513 F.3d at 112.

¶ 13 At least one state court has ruled similarly to the Third Circuit on this issue. In *American Civil Liberties Union of New Mexico v. City of Albuquerque,* 139 N.M. 761, 137 P.3d 1215 (App.2006), the New Mexico Court of Appeals held the City of Albuquerque's sex offender registration requirements were unconstitutional as a violation of the Equal Protection Clause where they treated non-resident sex offenders differently than resident offenders. *City of Albuquerque,* 137 P.3d at 1227. Following similar logic to that of the Third Circuit in *Doe v. Pennsylvania,* the New Mexico Court of Appeals held that:

[t]hese provisions result in differing treatment for resident and non-resident sex offenders that is not rationally related to the City's interest in protecting citizens from sex offenders.... In other words, the language in Section 5 does not require registration of those convicted sex offenders who are most likely to have the means and opportunity to reoffend in the City. Yet those offenders who were convicted of sex offenses outside of New Mexico, who reside outside the state, and are in the City only a limited number of days, must register. We agree with the district court that this violates equal protection guarantees.

*City of Albuquerque,* 137 P.3d at 1227.

¶ 14 The focal point of both of these cases is that state sex offender registration and notification requirements appear to violate the Equal Protection Clause where they discriminate against individuals solely because the conviction occurred in another jurisdiction. All other things being equal, such discrimination is not rationally related to the goal of protecting the population from sex offenders. Discrimination against categories of sex offenders based on factors such as type of offense and risk of recidivism is logical, whereas discrimination based on the jurisdiction in which the conviction occurred has no rational basis for protecting the public.

¶ 15 We find protecting its citizens from sex offenders is a legitimate state interest.

The question, however, is whether requiring persons to register under SORA who were convicted in another jurisdiction prior to its enactment and not likewise requiring registration of persons convicted in Oklahoma prior to SORA's enactment is rationally related to its security concerns. We conclude it is not.

¶ 16 As mentioned, the purpose of SORA is to permit law enforcement the opportunity to identify sex offenders and alert the public of such sex offenders when necessary. The registration generally advances that purpose by providing information to the public about convicted sex offenders in order for the public to take adequate precautions. However, creating a classification of pre-SORA sex offenders based solely on where their conviction occurred does not rationally further the state's interest in providing information to the public of the presence of sex offenders. The scheme excludes notifying the public of the presence of pre-SORA **Oklahoma** convicted sex offenders. The legislative enactment would allow two similarly convicted individuals prior to November 1, 1989, otherwise qualifying for registration to be treated dissimilarly solely based upon the jurisdiction of their conviction. We can find no rational basis for this classification and therefore it does not pass constitutional muster.

## CONCLUSION

¶ 17 We agree notifying citizens of the presence of convicted sex offenders is a legitimate governmental objective and protecting Oklahoma citizens from sex offenders is a compelling state interest. This objective, however, is not served by unequal application of the law to offenders solely based upon the jurisdiction of their conviction. Applying SORA's requirements to sex offenders who now reside in Oklahoma and were convicted in another jurisdiction prior to SORA's enactment when an Oklahoman convicted in Oklahoma of a similar offense prior to SORA's enactment is not required to register, violates a person's equal protection guarantees. This is so, however, if Hendricks was not serving a sentence or any form of

probation or parole on November 1, 2005, for the 1982 crime. Otherwise, he would have been treated in the same manner as a pre-SORA Oklahoma convicted person still serving a sentence or any form of probation and parole on November 1, 2005, and there would be no equal protection issue. We remand the matter back to the trial court to make a determination as to whether Hendricks as a result of the 1982 conviction, was serving a sentence or any form of probation or parole on November 1, 2005. If the trial court finds he was not serving a sentence or any form of probation or parole for the 1982 conviction on November 1, 2005, then he should be removed from the registry. We need not address his other constitutional arguments at this time.

**OPINION OF THE COURT OF CIVIL APPEALS VACATED; THE TRIAL COURT'S ORDER SUSTAINING MOTION FOR SUMMARY JUDGMENT IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION**

¶ 18 COLBERT, C.J., REIF, V.C.J., KAUGER, WATT, EDMONDSON, COMBS, and GURICH, JJ., concur.

¶ 19 TAYLOR, J., joined by WINCHESTER, J., dissenting:

I dissent for the same reasons that I stated in my dissent in *Starkey v. Oklahoma Department of Corrections*, 2013 OK 43, 305 P.3d 1004.